**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| LOUISIANA, *et al.*,<br><br>                Plaintiffs,<br><br>    v.<br><br>DEB HAALAND in her official capacity as Secretary of the Interior; *et al.*,<br><br>                Defendants. | Civil Action No. 24-00820-JDC-TPL |

**AMERICAN PETROLEUM INSTITUTE'S MOTION FOR LEAVE TO INTERVENE**

The American Petroleum Institute ("API") respectfully moves for leave to intervene in support of Federal Defendants in this matter. Plaintiffs challenge a Bureau of Ocean Energy Management ("BOEM") final rule ("Rule") clarifying the circumstances when BOEM "may" choose to exercise its longstanding regulatory authority to demand that current interest holders of Outer Continental Shelf ("OCS") oil and gas leases and grants provide supplemental financial assurance to BOEM to ensure performance of their obligations, including decommissioning of wells, platforms, pipelines and other facilities.[1] API is the nation's leading trade association for the petroleum and natural gas industry, and frequently represents its members' interests in lawsuits before this Court and elsewhere. API's members include companies who currently hold and previously held interests in OCS oil and gas leases and grants and are thus directly regulated by the Rule. API and its members submitted detailed comments to BOEM supporting the Rule.[2]

---

[1] *Risk Management and Financial Assurance for OCS Lease and Grant Obligations*, 89 Fed. Reg. 31,544 (Apr. 24, 2024).

[2] *See* API Comment Letter on BOEM Proposed Rule on Risk Management and Financial Assurance for OCS Lease and Grant Obligations, 88 Fed. Reg. 42,136 (June 29, 2023), 88 Fed.

1

API's intervention will help the Court's understanding of the issues involved in this litigation, in contrast to Plaintiffs' narrative. At base, Plaintiffs aver that the Rule effects a sea change from existing law and is a wholly unjust overreach by BOEM. But that simply is not so. Ensuring that lessees and grantees can satisfy their decommissioning and other obligations in the Gulf of Mexico has been BOEM's regulatory focus *for decades*. Further, BOEM has *always* had the discretion under those regulations to require current lessees to provide additional or supplemental financial assurance, and the Rule does not eliminate this discretion. Meanwhile, BOEM's adopted regulations have *never* reflected Plaintiffs' preferred—and unsound—policy to excuse current interest holders from their responsibility to satisfy any supplemental financial assurance obligations merely due to the existence of a larger predecessor company in the chain of title. At the very least, Plaintiffs' lawsuit is premature, as it speculates as to what supplemental financial assurance demands BOEM may or may not issue, and ignores BOEM's own public acknowledgement that it is not in a position to issue such demands for many months or years.[3]

Plaintiffs' requested relief to enjoin and vacate the Rule would substantially harm API's members, many of whom are predecessor lease interest owners upon whom Plaintiffs seek to foist financial responsibilities, even for facilities the predecessors never owned or operated. API and its members thus are deeply interested in the outcome of this litigation and are the best

---

Reg. 58,173 (Aug. 25, 2023), https://downloads.regulations.gov/BOEM-2023-0027-2006/attachment_1.pdf; *see also* Chevron U.S.A. Inc. Comment Letter, https://downloads.regulations.gov/BOEM-2023-0027-1974/attachment_1.pdf; Shell Offshore Inc. Comment Letter, https://downloads.regulations.gov/BOEM-2023-0027-2012/attachment_1.pdf; bp America, Inc. Comment Letter, https://downloads.regulations.gov/BOEM-2023-0027-2003/attachment_1.pdf.

[3] *See* BOEM, *Risk Management and Financial Assurance Rule Implementation Timeline*, https://www.boem.gov/newsroom/notes-stakeholders/boem-risk-management-and-financial-assurance-rule-implementation.

advocates for their unique interests. No party will adequately represent API's and its members' interests in defense of the Rule. Prompt intervention is critical to afford API the opportunity to defend against Plaintiffs' pending motion to stay or preliminarily enjoin the Rule. Therefore, the Court should grant API intervention.

API's counsel has met and conferred with counsel for the parties in this matter. Federal Defendants take no position on this motion to intervene. Plaintiffs oppose this motion.

## ARGUMENT

### I.  API IS ENTITLED TO INTERVENE AS OF RIGHT.

API readily meets the criteria for intervention as of right. *See* Fed. R. Civ. P. 24(a)(2). An intervention motion must "timely" show that the moving party has "an interest relating to the property or transaction that is the subject of the action," that it "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest," and that existing parties may not "adequately represent" that interest. *Id.* The Fifth Circuit has explained that "the inquiry . . . is a flexible one, which focuses on the particular facts and circumstances surrounding each application," and that "intervention of right must be measured by a practical rather than technical yardstick." *Ross v. Marshall*, 426 F.3d 745, 753 (5th Cir. 2005) (citations omitted). In this case, (1) API's motion is timely; (2) API and its members have significant protectable interests at stake; (3) API's and its members' interests would be practically and seriously impaired by the relief Plaintiffs seek; and (4) no party adequately represents the specific interests of API and its members in this case.

#### A.  API's Motion to Intervene is Timely.

Plaintiffs filed their complaint on June 17, 2024. Defendants have not yet filed a responsive pleading, which is not due until 60 days after service of the complaint. Fed. R. Civ.

P. 12(a)(2). Plaintiffs' preliminary injunction motion was filed on June 20, 2024, and Defendants' opposition is not due until August 9, 2024. ECF No. 31. The Court has not yet set a schedule for filing the administrative record or merits briefing. API agrees to abide by the same litigation deadlines and filing requirements as Federal Defendants unless otherwise ordered by the Court, including, but not limited to, the established deadlines for responding to Plaintiffs' preliminary injunction motion and for filing a responsive pleading to Plaintiffs' complaint. Thus, API's intervention will not prejudice any party or result in delay.

### B. API Has a Significant Protectable Interest in the Litigation, Which Is Threatened by Plaintiffs' Requested Relief.

API and its members have a "direct, substantial, [and] legally protectable" interest in the Rule, that would be practically impaired or impeded if Plaintiffs were to prevail in this action. *See Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (citations omitted). API's interest arises because this litigation addresses the regulatory scheme governing its members' operations under both the Rule and the preexisting regulations of BOEM and its sister agency the Bureau of Safety and Environmental Enforcement ("BSEE"). *Id.* (timber association granted intervention as of right in challenge to national forest management practices); *see also Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 567 (5th Cir. 2016) ("[A]ssociations representing licensed business owners have a right to intervene in lawsuits challenging the regulatory scheme that governs the profession."); *Supreme Beef Processors, Inc. v. U.S. Dep't of Agric.*, 275 F.3d 432, 437 n.14 (5th Cir. 2001) (association had sufficient interest to intervene where lawsuit "deal[t] with the application of a [regulatory] standard that affects [association's]

4

members"). And "the disposition of the underlying suit has, at the very least, the potential to impair [API's] interest." *Ross*, 426 F.3d at 761.

API represents the interests of its nearly 600 members that are involved in all aspects of the oil and gas industry, including exploration and production, and conduct much of the production, refining, marketing, and transportation of petroleum and petroleum products in the United States. Together with its member companies, API is committed to ensuring a strong, viable U.S. oil and gas industry capable of meeting the energy needs of our Nation in an efficient and environmentally responsible manner. Toward that goal, many API members currently hold ownership and operating rights interests in leases, pipeline right-of-way grants, and right-of-use-and-easement grants on the OCS.[4] Many API members also are predecessor interest holders in OCS leases and grants that sold or transferred those interests to other companies, including many years or decades ago. Many API members also are major integrated or large independent companies that Plaintiffs identify as being on the opposite side of the dispute their lawsuit seeks to address. *E.g.*, Compl. ¶¶ 33, 42, 162 (referencing specific operators that are members of API as beneficiaries of the Rule).[5] To be sure, API's interests are no less substantial and impacted than the organizational Plaintiffs in this action purporting to represent the oil and gas industry.

Furthermore, based on their extensive experience in these matters, API and its members are uniquely situated to demonstrate to the Court that BOEM's Rule is neither novel nor

---

[4] API's membership has some overlap with the membership of Plaintiff organizations here.

[5] *See also* API member Chevron Comment Letter at 1, https://downloads.regulations.gov/BOEM-2023-0027-1974/attachment_1.pdf ("Chevron, and its affiliated companies, have been exploring and developing outer continental shelf ('OCS') leases from inception of the federal offshore leasing program under the Outer Continental Shelf Lands Act of 1953 ('OSCLA') through today and are committed to remain active in the OCS well into the future. We continue to hold interest in hundreds of both producing and non- producing leases in the Gulf of Mexico and have held interest in thousands of leases during the existence of the offshore leasing and development program established under OCSLA."); API member Shell

remarkable. BOEM and its predecessor agencies have required financial assurance from OCS lessees for decades, *e.g.*, 30 C.F.R. part 556 (2023); 58 Fed. Reg. 45,255 (August 27, 1993), and BOEM's authority to promulgate the Rule is outlined in the Outer Continental Shelf Lands Act, 43 U.S.C. § 1334.[6] The Rule does not alter any company's liability for OCS lease and grant obligations, whether as applied to current or predecessor interest holders. BOEM and BSEE always have held current interest owners responsible in the first instance for performing their obligations, even if they ultimately refuse or are unable to do so. *See, e.g.*, 30 C.F.R. §§ 550.147(a), 556.710, 250.1708(c). Moreover, even before the Rule, supplying adequate financial assurance to BOEM (to, among other things, protect taxpayers from a lessee's default) has always been the obligation solely of current lease interest holders. *See* 30 C.F.R. part 556 (2023). In addition, the Rule creates no financial assurance obligation or amount beyond what BOEM already could have ordered under its preexisting regulations. *E.g.*, 58 Fed. Reg. at 45,256 ("This [1993] final rule also *retains* the provision under which the authorized officer may require additional security in the form of a supplemental bond or bonds or require an increase in the coverage of an existing bond when additional security is deemed necessary . . . .") (emphasis

---

Comment Letter at 1, https://downloads.regulations.gov/BOEM-2023-0027-2012/attachment_1.pdf ("Shell has been operating on the OCS (including the Gulf of Mexico (GOM), Pacific, and Alaska Regions) for over 65 years, and we are currently one of the largest leaseholders and the largest producer of oil, producer of gas, and royalty payor from federal leases on the OCS. We also operate about one-third of all daily oil production from the GOM and we deploy approximately $2 billion annually in capital and operating expenses toward these ventures."); API member BP Comment Letter at 1, https://downloads.regulations.gov/BOEM-2023-0027-2003/attachment_1.pdf ("bp has a long and material leasehold position across the Gulf of Mexico (GoM). We currently operate five hubs in this region. . . . We expect that these hubs combined will ultimately contribute approximately 400,000 barrels of oil equivalent per day (boe/d) by the mid-2020's.").

[6] *See also* BOEM, *Risk Management and Financial Assurance for OCS Lease and Grant Obligations, Response to Public Comments Received on the June 29, 2023, Notice of Proposed Rulemaking, Docket No. BOEM-2023-0027*, at 11-13, https://downloads.regulations.gov/BOEM-2023-0027-2187/content.pdf.

added). Rather, the Rule, among other things, adopts clearer and more objective standards for BOEM to determine when supplemental financial assurance is *not* necessary, and conversely when BOEM "may" (not must) order supplemental financial assurance. *E.g.,* 30 C.F.R. § 556.901(d).

By contrast, Plaintiffs' lawsuit *does* seek to create novel changes to the law and threatens substantial consequences to API and its members. Plaintiffs want to eliminate their own obligations and thrust them upon predecessor entities in a chain of title, a dramatic change from the regulations prior to the Rule. Nothing even in the prior regulations allows a current interest holder to refuse to satisfy a BOEM demand for supplemental financial assurance on the basis that there are financially stronger predecessors in the chain of title. Plaintiffs also fail to tell the whole story about decommissioning obligations. For example, they ignore that predecessors *accrue no liability* for wells, platforms, and infrastructure installed *after* their transfer of a lease or grant interest; thus, BOEM cannot pursue predecessors to decommission such later-added infrastructure. *See* 30 C.F.R. § 250.1702. That is, certain decommissioning obligations unquestionably apply *only* to the current operators, including Plaintiffs who challenge the Rule.

API's active participation in litigation involving offshore oil and gas issues further underscores its interest and its members' interest in these matters here. *E.g.*, Court Order, *Deep South Center for Env't Just. v. USEPA*, No. 24-60084, Dkt. 48 (5th Cir. June 12, 2024) (granting API intervention to defend U.S. Environmental Protection Agency's grant of primacy to State of Louisiana over Class VI underground injection control well program); Memorandum Opinion & Order, *Friends of the Earth v. Haaland*, No. 21-2317, Dkt. 60 (D.D.C. Dec. 11, 2021) (granting API intervention to defend challenge to BOEM OCS Lease Sale 257). While API and its members have challenged unlawful agency actions, the Rule here is not such an action and

7

merits a full defense. API as an intervenor has much to say on all of these critical topics and in response to Plaintiffs' arguments, which have directly invoked API's members.

  **C.**   **Other Parties Do Not Adequately Represent API's Interests in This Case.**

Finally, no party adequately represents the interests of API and its members in this case. While some of Plaintiffs' members are oil and gas lessees and operators like API's members, their views on the Rule are not aligned with—and in some instances directly adverse to—the views of API's members. Thus, Plaintiffs do not adequately represent API's interests because their legal position in this litigation is adverse to API.

Federal Defendants will represent the multi-faceted and public interests of BOEM, but not the specific, private interests of API and its members. *See Espy*, 18 F.3d at 1208. While API expects that Federal Defendants will vigorously defend the Rule, at this early stage API cannot know based solely on the complaint what arguments Plaintiffs will assert or what defenses Federal Defendants will raise. Nor can the Federal Defendants adequately represent the interests of API and its members against Plaintiffs' attempts to disclaim decommissioning obligations because they prefer that API-member predecessor entities should be financially responsible for all of them. Therefore, API's participation as an intervenor here is essential to protect its and its members' unique interests.

**II.**   **IN THE ALTERNATIVE, THE COURT SHOULD USE ITS DISCRETION TO PERMIT API TO INTERVENE.**

At a minimum, this Court should permit API leave to intervene under Rule 24(b). A party may permissively intervene if it "has a claim or defense that shares with the main action a common question of law or fact," as long as permitting intervention would not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)(B), 24(b)(3).

"[T]he 'claim or defense' portion of Rule 24(b)(2) has been construed liberally." *Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006) (citations omitted).

API will defend against the central legal claims and the relief sought in this litigation but has a perspective unique from the Federal Defendants and should be permitted to respond to various allegations as to its members. As explained above, intervention at this early stage of litigation will not unduly delay this case or prejudice existing parties. *See* Fed. R. Civ. P. 24(b)(3). Thus, at a minimum, the Court should exercise its discretion to grant API permissive intervention.

## CONCLUSION

For the foregoing reasons, the Court should grant API's motion to intervene as of right. In the alternative, the Court should grant API permissive intervention.

Dated: July 16, 2024                                  Respectfully submitted,

*/s/ Kennard B. Davis*
Kennard B. Davis
BEVERIDGE & DIAMOND, P.C.
201 North Charles Street, Suite 2210
Baltimore, MD 21201
Telephone: (410) 230-1318
kdavis@bdlaw.com

James M. Auslander (pro hac vice pending)
Peter J. Schaumberg (pro hac vice pending)
BEVERIDGE & DIAMOND, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
Telephone: (202) 789-6000
Fax: (202) 789-6190
jauslander@bdlaw.com
pschaumbeg@bdlaw.com

*Attorneys for Proposed Intervenor American Petroleum Institute*

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of July 2024, a true copy of the foregoing was served electronically through the Court's CM/ECF system with the Court and all registered counsel.

>  */s/ Kennard B. Davis*
>  Kennard B. Davis
>  Beveridge & Diamond, P.C.