# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | |
|---|---|
| STATE OF LOUISIANA, *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>DEB HAALAND in her official capacity as Secretary of the Interior, *et al.,*<br><br>Defendants,<br><br>and<br><br>AMERICAN PETROLEUM INSTITUTE,<br><br>Intervenor-Defendant-Applicant. | Case No. 2:24-cv-00820<br><br>Hon. Judge James D. Cain, Jr.<br><br>Hon. Magistrate Judge Thomas P. LeBlanc<br><br>**DEFENDANTS' SUR-REPLY TO PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR STAY OR PRELIMINARY INJUNCTION** |

Plaintiffs argue in their supplemental memorandum that, short of emergency relief, the Court will be unable to resolve this case before the Bureau of Ocean Energy Management (BOEM) first issues requests for supplemental financial assurance in mid-2025. Plaintiffs also argue that the final rule is causing them three types of irreparable harm. Plaintiffs' arguments are without merit.

Defendants agree with Plaintiffs that this case should be resolved by motions for summary judgment, rather than a bench trial, as Plaintiffs solely seek judicial review of agency action pursuant to the Administrative Procedure Act (APA). 5 U.S.C. § 702; ECF No. 1. Under such circumstances, motions for summary judgment are generally limited to material within the administrative record that existed before the agency at the time of the challenged action. *Luminant Generation Co. LLC v. U.S. E.P.A.,* 714 F.3d 841, 850 (5th Cir. 2013) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)) ("the focal point for judicial review [under the APA] should be the administrative record already in existence, not some new record made initially in the reviewing court"). Defendants are actively gathering and organizing the administrative record and will lodge a certified copy with the Court no later than December 6, 2024.[1] Given this service date, Defendants disagree with Plaintiffs' contention that the Court will be unable to adjudicate this case on the merits before BOEM issues any requests for supplemental financial assurance. For example, Plaintiffs could file a motion for summary judgment by the end of February, Defendant could both respond in opposition and file a cross-motion for summary judgment by the end of March, and Plaintiffs could respond by the end of April; in that event, the

---

[1] On October 1, 2024, the parties tentatively agreed that Defendants would lodge the administrative record by December 6, 2024; Plaintiffs would move to supplement the administrative record, if at all, by January 10, 2025; and the parties would propose a dispositive motion briefing schedule to the Court by January 31, 2025. The parties have not yet submitted this tentative schedule for the Court's approval.

Court would have one month to issue a dispositive ruling even under the shortest possible iteration of the timeline described in Plaintiffs' Supplemental Memorandum. *See* ECF No. 84-1 at 2-3; *see also* LR56.1 and LR56.2. Alternatively, under a shortened briefing schedule, Plaintiffs and Defendants could file a motion and cross-motion for summary judgment by the end of February, and respective responses in opposition to the motions by the end of March; in that event, the Court would have, at a minimum, two months to issue a dispositive ruling. *Id.* In short, the Parties can coordinate a dispositive motion schedule that enables the Court to rule on the issues, with the benefit of the administrative record, before BOEM issues requests for supplemental financial assurance, which will occur, at the earliest, in mid-2025.[2] *See also* ECF No. 58 at 14.

Next, Plaintiffs' attempt to rehash irreparable harm arguments already raised in both their briefs and at oral argument are unavailing. *See* ECF No. 6-1 at 64-67; ECF No. 58 at 11-17. First, as addressed during oral argument, Plaintiffs have failed to produce a *single* letter from a surety to a Plaintiff demanding new collateral because of the final rule. Rather, Plaintiffs refer to a single letter from a surety demanding collateral or partial collateral by August 9, 2024, pursuant to an executed agreement. ECF No. 76-1. The letter, however, does not explain why the surety is demanding the collateral and does not refer to the final rule. *Id.* Plaintiffs' attempt to link this letter to the final rule, based on an allegation in a court filing in an unrelated case, is uncompelling.[3] ECF No. 76-2. Despite extensive briefing to date in this case, this is the *only*

---

[2] Plaintiffs' speculation that BOEM will issue requests for supplemental financial assurance by the end of May 2025, a month shy of mid-2025 (the earliest possible date by which BOEM will issue requests, if any) is not a clear showing of irreparable harm to warrant a preliminary injunction. *Mazurek*, 520 U.S. at 972.
[3] In *W&T Offshore, Inc. v. Endurance Assurance Corp.*, the plaintiffs assert that Sompo Sureties (the surety demanding collateral in ECF No. 76-1) failed to act in good faith and fair dealing in demanding the collateral. ECF No. 76-2 at ¶¶ 70-75.

2

letter that Plaintiffs have produced to argue that the final rule is causing sureties to demand new collateral from Plaintiffs, and Plaintiffs have given the Court no reason to consider this letter as a "representative example" of otherwise undisclosed letters. ECF No. 84-1 at 3.

Second, Plaintiffs argue that they are spending significant yet unspecified sums for, as the Court observed, "a demand letter you haven't gotten yet[.]" ECF No. 87 at 84:24-25. Plaintiffs fail to provide either a calculation or estimate of their alleged compliance costs, and simply refer to two declarants' generalizations of unspecified expenditures. ECF No. 6-7 at ¶ 35 ("[t]hese expenditures come at a great cost"); ECF No. 6-4 at ¶ 31 ("[t]he Rule imposes immediate costs on us to review and comply with its new financial assurance regime"). Regardless, even if Plaintiffs could reduce their compliance costs to a specific sum or reasonable estimate, they do not meet their burden of showing that such costs comprise irreparable harm. *Louisiana v. Biden,* 55 F.4th 1017, 1033-34 (5th Cir. 2022) (to the extent that compliance costs are recoverable, they are not irreparable, and it is plaintiff's burden to show irreparable harm in the form of "nonrecoverable compliance costs"). Moreover, the cases that Plaintiffs cite are distinguishable in that they involve proffers of evidence specifically demonstrating each plaintiff's harm, whereas Plaintiffs in this case offer only vague statements of costs. *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 66 F.4th 593, 599 (5th Cir. 2023) ("specific estimates" of 8-10 minimum hours per week for employees to comply with a challenged labor regulation comprised unrecoverable compliance costs and irreparable harm); *Career Colleges & Sch. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 236 (5th Cir. 2024) ("[s]pecific evidence in the record" of efforts needed to comply with a new student loan rule, including new record-keeping policies, and new training for at least 255 staff members, among other efforts, met the standard of irreparable harm).

Third, Plaintiffs revisit their argument that the final rule is altering Plaintiffs' present business investments and production. Plaintiffs refer to three declarants who briefly and vaguely

state that *some* of their operations will not satisfy one of the two criteria for exemption from supplemental financial assurance under the final rule. ECF No. 6-5 at ¶ 10-11, ECF No. 6-6 at ¶ 15, ECF No. 6-7 at ¶ 23. These cursory and nonspecific statements, referencing distant predictions about possible effects of the final rule, are not a clear showing of irreparable harm and thus do not warrant the drastic remedy of a preliminary injunction. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Louisiana by & through Landry v. Biden*, 64 F.4th 674, 680–81 (5th Cir. 2023) ("Plaintiffs' alleged injury must be concrete and particularized and actual or imminent, not conjectural or hypothetical. Allegations of *possible future* injury will not suffice.") (cleaned up). Further, the cases Plaintiffs cite are not germane to this case. *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 312 (5th Cir. 2008) (likelihood of confusion in a trademark case is irreparable harm); *Rest. L. Ctr.,* 66 F.4th at 599-600 (restaurant employers intending to claim "tip credit" required more than ten minutes per week to monitor and record employees' working hours).

  Lastly, the balance of equities and public interest weigh against a preliminary injunction. As the Court observed during oral argument, BOEM promulgated a rulemaking pursuant to the APA to address the clear and reoccurring problem of abandoned infrastructure in the Outer Continental Shelf. ECF No. 87 at 70:8-17; 71:9-11. Further, if the final rule is enjoined, BOEM will remain authorized to request supplemental financial assurance from Plaintiffs, albeit by the protocol of the preexisting rule. BOEM cogently explained during rulemaking why the five criteria of the preexisting rule were less clear and created greater uncertainty for operators than the challenged final rule. *See* Risk Management and Financial Assurance for OCS Lease and Grant Obligations, 89 Fed. Reg. at 31,544 (Apr. 24, 2024) (addressing why the five criteria did not accurately or consistently predict potential financial distress of lessees); *see also* ECF No. 58-8 (Regulatory Impact Analysis) at 12-14, 55-56 (addressing why the preexisting rule created

4

significant regulatory uncertainty for lessees, grant holders and operators). As a result, Plaintiffs' request for a preliminary injunction "to preserve the status quo" is actually a request to revert to the preexisting rule that allows for similar, if less predictable, demands for supplemental financial assurance.

Respectfully submitted on October 24, 2024.

TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

*/s/ Katharine Laubach*
KATHARINE LAUBACH (Colorado Bar #42693)
Trial Attorney
Natural Resources Section
999 18th Street, South Terrace, Suite 370
Denver, CO 80202
Telephone: (202) 305-8568
katharine.laubach@usdoj.gov

*/s/ Paul Turcke*
PAUL TURCKE (Idaho Bar #4759)
Trial Attorney
Natural Resources Section
1290 West Myrtle Street, Suite 500
Boise, ID 83702
Telephone: (202) 532-5994
paul.turcke@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2024, I electronically filed **DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR STAY OR PRELIMINARY INJUNCTION** with the Clerk of Court using the ECF system, which will automatically send email notifications to the attorneys of record.

_/s/ Katharine Laubach_
KATHARINE LAUBACH
