UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| STATE OF LOUISIANA, et al., | Civ. No. 2:24-cv-00820 |
| Plaintiffs, | |
| v. | Hon. Judge James D. Cain, Jr. |
| DEB HAALAND in her official capacity as Secretary of the Interior, *et al.*, | |
| | Hon. Magistrate Judge Thomas P. LeBlanc |
| Defendants. | |

**AMICUS BRIEF OF W&T OFFSHORE, INC. AND W&T ENERGY VI, LLC IN RESPONSE TO THE BIDEN ADMINISTRATION'S RESPONSE (ON BEHALF OF THE GOVERNMENT DEFENDANTS) TO PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR STAY OR PRELIMINARY INJUNCTION**

W&T Offshore, Inc. and W&T Energy VI, LLC (collectively, "W&T") respectfully file this Amicus Brief in response to The Biden Administration's Response (on behalf of the government defendants) to Plaintiffs' Supplemental Memorandum in Support of Motion for Stay or Preliminary Injunction (the "Biden Administration's Response"). (ECF No. 95).

a. **Procedural history.**

This Court heard argument on Plaintiffs' motion for preliminary injunction on October 3, 2024 (ECF No. 81), and the motion remains under advisement. Since the argument, Plaintiffs obtained leave to file two supplemental memoranda, most recently on December 26, 2024. (ECF Nos. 85, 93). This Court directed the government defendants to file a response "addressing the specific harms" alleged in the First Amended Complaint ("W&T's First Amended Complaint") "filed in *W&T Offshore v. Endurance Assurance*, No. 4:24-cv-03047 (S.D. Tex. Dec. 11, 2024)"

(the "W&T Litigation"). (ECF No. 93).[1] This Court set the government's deadline to file said response on **January 30, 2025**.

Importantly, President Trump—who publicly announced his intention to reverse the outgoing Biden Administration's anti-energy policies, which are at the very heart of this case—was inaugurated on Monday, January 20, 2025. **On Friday, January 17, 2025**, the last full business day of the Biden Administration, the Biden Administration rushed to file a response (13 days before it was due), on behalf of the government defendants, knowingly advancing arguments that would be inconsistent with President-Elect Trump's incoming energy policies. To add insult to injury, the Biden Administration's Response reflects ***material factual misstatements*** that are demonstrably false. W&T files this amicus brief to correct these factual inaccuracies.

b.     **Arguments**.

The Biden Administration's Response falsely conveys that "the W&T Litigation is a private dispute between private parties that is not relevant to this case." (ECF No. 95). The Biden Administration acknowledges that the dispute stems from "defendant surety companies" holding existing "government-mandated and private bonds" unlawfully "conspir[ing]" to demand "unprecedented and impossible collateral" from W&T (*id*.). But then the Biden Administration wrongly alleges that the "demands do not arise from the Risk Management and Financial Assurance Rule at issue in th[is] litigation." (*Id*. at p.2, ¶2.) This is patently false.

Despite what the Biden Administration represented, Plaintiffs in this case **correctly** informed this Court that "the surety demands at issue in *[the W&T Litigation]* are caused by the [BOEM] Rule." (*Id*.) In an attempt to discredit Plaintiffs' statement, the Biden Administration disingenuously points to W&T's First Amended Complaint, incorrectly claiming that W&T itself

---

[1] The W&T First Amended Complaint appears in the docket of this case at pages 4-38 of the Supplemental Memorandum, ECF No. 94.

"stresses that the Rule did not affect any of these existing surety bonds or require demands for additional collateral. *Id*. ¶¶114, 116." (*Id*.) Yet, W&T's First Amended Complaint unambiguously makes clear that the W&T Litigation arises from the sureties' improper use of the BOEM Rule:

> Sureties … [are unlawfully using] the BOEM's rule as a pretext to collectively and in concerted fashion demand nearly $250 million from W&T. (Doc. 30 at 15 ("[A]nother factor in [the surety's] decision to demand additional collateral was a new rule, finalized in April 2024, to determine if and how much supplemental financial assurance is required for offshore operations on the [Outer Continental Shelf] …).

(*Id*. at ¶115).

W&T's First Amended Complaint also makes clear why the W&T Litigation is relevant to this case, as it embodies the very type of irreparable harm this Lawsuit aims to avoid:

> The Sureties cannot use the rule to demand what, in effect, are ransoms. First, the Rule does not permit the Sureties to collude or violate antitrust law. Second, the Rule itself is being challenged by several entities and may become void. *State of Louisiana, et al. v. Haaland*, et al., No. 2:2024-cv-00820 (W.D. La.) (the "Lousiana Lawsuit"). In fact, in <u>the Louisiana Lawsuit, the Texas Attorney General specifically cites W&T [and the W&T Litigation] as an example of how BOEM's rule can be misused to irreparably harm companies like W&T</u>. (*Id*. at Dkt. 76 at 4-5) (Texas Attorney General's Office recognizing that the Sureties' joint unjustified request for collateral can be "economically devastating" to companies like W&T").

(*Id*. at ¶115). W&T explains that "the Sureties **know** the BOEM rule does not support their scheme, but" (*id*. at ¶117) they are nevertheless using it "as a pretext to extract outrageous sums from smaller oil and gas companies like W&T." (*Id*. at ¶3)

To advance their false narrative, the Biden Administration also references a preliminary injunction motion filed against W&T by one of its sureties. *See* W&T Offshore, ECF No. 30 (filed Nov. 2024). Yet, in this very motion—on which the Biden Administration basis its false statement—***the surety company unequivocally concedes that its demand for collateral was, in fact, based on the BOEM rule at issue in this case:***

> [A]nother factor in Lexon's decision to demand additional collateral was a new rule, finalized in April 2024, to determine if and how much supplemental financial assurance is required for offshore operations on the [Outer Continental Shelf].

(Dkt. 30 at 30.) Given this, "[b]ased on the more onerous regulatory financial requirements . . . [the surety] sought collateral from W&T." *Id.* at 15. The surety defendants, therefore, openly admitted that the updated BOEM Rule was the leading factor in their decision to demand additional collateral, and they have relied on the regulation to improperly demand hundreds of millions of dollars in collateral from W&T. *See* Counterclaim at ¶ 42, ECF No. 28; Motion for PI at 10, ECF No. 30, *W&T Offshore, Inc. v. Endurance Assurance Corp.*, No. 24-cv-3047 (S.D. Tex. 2024).

Accordingly, W&T vehemently disputes the Biden Administration's misrepresentations. The W&T Litigation **is** relevant to this case. And the sureties in the W&T Litigation (as well as other sureties in the offshore industry) **are** using the BOEM rule in their unlawful collusive attempts to demand collateral from oil and gas operators like W&T.

DATED: February 11, 2025

                                                      Respectfully submitted,

                                                      McGuireWoods LLP

*/s/ Miles O. Indest*
Miles O. Indest (La. #37474)
McGuireWoods LLP
845 Texas Ave., Suite 2400
Houston, Texas 77002
mindest@mcguirewoods.com
(713) 353-6681 Telephone
(832) 255-6381 Facsimile

Yasser A. Madriz (phv forthcoming)
Texas State Bar No. 24037015
S.D. Texas Bar No. 39080
Jason Huebinger (phv forthcoming)
Texas State Bar No. 24065460
S.D. Texas Bar No. 1717237
McGuireWoods LLP

845 Texas Ave., Suite 2400
Houston, Texas 77002
(832) 255-6361 Telephone
(832) 214-9931 Facsimile
ymadriz@mcguirewoods.com
jhuebinger@mcguirewoods.com

**ATTORNEYS FOR W&T OFFSHORE, INC. AND W&T ENERGY VI, LLC**